IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION


PAULA L. BROWN                                                    PLAINTIFF

                    v.                    Civil No. 12-3149

CAROLYN W. COLVIN,[1] Commissioner
Social Security Administration                                   DEFENDANT

MEMORANDUM

        Plaintiff, Paula L. Brown brings this action under 42 U.S.C. § 405(g), seeking judicial review of

a decision of the Commissioner of Social Security Administration (Commissioner) denying his/her claim

for disability insurance benefits ("DIB") under Title II of the Social Security Act (hereinafter "the Act"),

42 U.S.C. §§ 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial

evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

I.      **Procedural Background**

        Plaintiff applied for DIB on June 9, 2010. (Tr. 9.) Plaintiff alleged an onset date of June 21, 2006

due to congestive heart failure, fluid in lungs, cellulitis, GERD, right shoulder surgery, and angina. (Tr.

8, 140.) Plaintiff's applications were denied initially and on reconsideration. Plaintiff requested an

administrative hearing, which was held on September 8, 2011. (Tr. 21.)  Plaintiff was present to testify

and was represented by counsel.  The ALJ also heard testimony from Plaintiff's husband, Richard. E.

Brown and  Monty Lumpkin, Vocational Expert ("VE"). (Tr. 21.)

        At the time of the administrative hearing, Plaintiff was 57 years old, and possessed a high school

diploma, two years of college education,  and had been a Licensed Practical Nurse ("LPN"). (Tr. 25-26,

142.)The Plaintiff had past relevant work experience ("PRW") of nursing. (Tr. 58.)

        On December 2, 2011, the ALJ concluded that Plaintiff had no severe impairments. (Tr. 10.)

_____

        [1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner
Michael J. Astrue as the defendant in this suit.

Plaintiff requested a review by the Appeals Council on December 22, 2011. (Tr. 69.) The Appeals Council denied the appeal on October 25, 2012. (Tr. 1.)


## II.    Applicable Law

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

2

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003).  Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.    Discussion

Plaintiff raises several issues on appeal: 1) that the ALJ failed to consider medical evidence both prior to and after her date last insured which showed that she was suffering from coronary artery disease and congestive heart failure; 2) the ALJ failed to failed to obtain expert medical evidence regarding Plaintiff's medical condition prior to her date last insured; and 3) the ALJ erred by not finding Plaintiff's medically determinable issues with her shoulder and gastroesophageal reflux disease ("GERD") to be severe impairments. (Pl.'s Br. 12.)

### A. No Medical Evidence Showing Symptoms of Early Cardiac Issues in Progress Prior to Date Last Insured

Plaintiff argues that she was "carrying the risk of congestive heart failure and coronary artery disease" as of April 2010. (Pl.'s Br. 13.) While April 2010 is after Plaintiff's date last insured, nonetheless this Court carefully examined the medical record for any retrospective medical diagnoses that might show pre-expiration evidence of cardiac issues. Unfortunately, such evidence simply does not exist.

" In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status." *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998). (citing 42

3

U.S.C. §§ 416(i), 423(c); *Stephens v. Shalala*, 46 F.3d 37, 39 (8th Cir.1995) (per curiam)). "It is well-settled that evidence of a disability subsequent to the expiration of one's insured status can be relevant in "helping to elucidate a medical condition during the time for which benefits might be rewarded."*Id*.  For example, in the case of degenerative diseases which, inherently by their nature must begin prior to an onset date of disability,   "[r]etrospective medical diagnoses constitute relevant evidence of pre-expiration disability." *Jones v. Chater*, 65 F. 3d 102, 103 (8th Cir. 1995) (citing *McClain v. Bowen*, 848 F.2d 892, 894 (8th Cir. 1988. "However, evidence outside the relevant time period cannot serve as the only support for the disability claim." *Pyland*, 149 F.3d at 878  (citing *Milton v. Schweiker,* 669 F.2d 554, 555 n. 1 (8th Cir.1982) (per curiam) (noting that a heart attack subsequent to the expiration of insured status without evidence of a heart condition during the relevant time period cannot serve as a basis for recovering disability benefits).

Plaintiff's date last insured is September 30, 2009. (Tr. 8.) There are two pre-expiration medical documents noting a possible cardiac complaint in the record. On April 1, 2003, Plaintiff presented at St. John Medical Center with atypical chest pain. (Tr. 230.) During her admission, all of her cardiac tests were normal. (Tr. 230.) A "GI cocktail" relieved her pain. (Tr. 231.) She was discharged with a prescription for Prevacid[2] and nitroglycerin. Concerning the nitroglycerin, the discharging physician noted: "this medication is given because the patient said it relieved her pain. Although, we believe the pain is GI related rather than cardiac at this point. If the patient continues to have chest pain symptoms, a cardiology consult may be considered in the future." (Tr. 231.) On  November  30, 2005, Plaintiff  presented at the Unity Health Center Emergency room complaining of unstable angina. Her cardiac angiogram was normal. Dr. Gupta stated "really, no symptoms" in his notes. Dr. Gupta felt  "some of her problems are related to anxiety, stress." His final diagnosis on December 1, 2005 was acute chest pain, with myocardial infarction

---

[2]Prevacid is a proton pump inhibitor indcated for treatment of duodenal ulcers, active benign gastric ulcer and erosive esophagitis.http://www.pdr.net/drug-summary/prevacid?druglabelid=1930&id=1468. (Las accessed March 4, 2014.)

ruled out. "Patient has normal coronaries." Instead of any cardiac disease he indicated "possible gastroesophageal spasm reflux disease and anxiety stress depression. (Tr. 256.)

There are no medical documents whatsoever between December 2005 and March 2010.

Plaintiff's medical record picks up again in March 2010 where she was established as a new patient with Dr. Bogle at Ahrens Medical Clinic. She presented with a cough, congestion, and head congestion. (Tr. 358.) Diagnosis/impression was  bronchitis, chronic obstructive pulmonary disease "COPD"), hypothyroidism, and health maintenance. In April 2010 she presented for a "followup with coronary artery disease, worsening shortness of breath." Dr. Bogle admitted her to Baxter Regional Hospital for a cardiac workup. She was stable to travel in a private car. (Tr. 357.)

In May 12, 2010 she saw Dr. Bogle for a "followup from hospital." He stated that he had sent her to the hospital due to the possibility of mild congestive heart failure. In summarizing the tests from the hospital he stated the following: "Echo had actually looked pretty good, but she did improve greatly with decreasing her fluid load. On discharge he placed her on lisinopril and "all her cardiac markers were negative." (Tr. 356.)  Dr. Bogle kept her on Lasix and lisinopril and arranged a stress test. Impression was chest pain and shortness of breath. (Tr. 356.) On May 25, 2010, Dr. Bogle's impression was congestive heart failure and GERD. (Tr. 354.)

Thus, the first time Plaintiff was actually diagnosed with any cardiac issue is May 25, 2010. (Tr. 354.) This is several months after her date last insured of September 30, 2009. Nor is there any indication in the record that the Plaintiff was somehow in the early stages of congestive failure prior to her date last insured. It is true that congestive heart failure " usually involves gradual deterioration."[3] However, with no diagnosis of even possible heart failure in 2003 and  2005, and no medical records at all between 2005 and  2010, this Court simply cannot find any indication of a degenerative disease pattern in progress.

---

[3]THE MERCK MANUAL,
http://www.merckmanuals.com/professional/cardiovascular_disorders/heart_failure/heart_failure_hf.html?qt=congestive%20heart%20failure&alt=sh#v936076 (last accessed Feb. 27, 2014).

**B. No Failure to Develop the Record**

Plaintiff acknowledges that it is not possible for  a retroactive physical examination to be made, (Pl.'s Br. 15.), but argues that the ALJ failed to fully develop the record because he did not obtain a medical opinion to support his decision that the heart-related diagnoses did not exist during the relevant time period." (Pl.'s Br. 14.)

The Agency explicitly recognizes that "[w]ith slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling." SSR 83-20. "In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process." *Id.* The ALJ is required to seek the assistance of a medical advisor to make that inference  "only if the medical evidence of onset is ambiguous." *Grebenick v. Chater*, 121 F.3d 1193, 1201 (8th Cir. 1997). *See e.g. Id.* (when medical evidence from 1983 and 1984  indicated that claimant's multiple sclerosis symptoms were not yet disabling, then the ALJ did not require a medical advisor to determine that onset had not yet occurred in 1982); *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006)(ALJ did not need medical advisor when there was no medical evidence to support alleged onset date ).

As detailed above in Section A, there is no medical evidence to support any allegation of cardiac issues prior to May 2010. (Tr. 354.) This is several months after Plaintiff's date last insured of September 30, 2009. There is no ambiguity in this medical record. Therefore, the ALJ did not need a medical advisor to help him infer the onset date.

**C. No Error in Finding Shoulder Issues and GERD Non-severe**

Plaintiff argues that SSR 99-3p required the ALJ  to find that Plaintiff's GERD and history of right shoulder surgery were severe impairments because she provided objective medical evidence that they were medically determinable impairments. (Pl.'s Br. 14.)

6

As this Court has stated before, Plaintiff's reliance on SSR 99-3p is disingenuous at best. SSR 99-3p was superceded in 2003 by SSR 03-3p. Further, SSR 03-3p provides guidance for evaluating impairments for individuals aged 65 or older. Given that Plaintiff was 57 at the time of the hearing in 2011, SSR 03-3p is not applicable to this case.

Nonetheless, the ALJ recognized Plaintiff's GERD and right shoulder surgery as medically determinable impairments but did not find them to be severe at Step Two of his analysis. "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

The burden is upon the plaintiff to establish that an impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). This burden is not a difficult one for the Plaintiff to meet. *Id.* However, it is also not a "toothless standard" requiring the ALJ to simply rubber-stamp any impairment as severe. *Id*. The Eighth Circuit has repeatedly upheld the Commissioner in finding that a claimant did not provide sufficient evidence of severity at Step Two. *Id. See e.g. Id.* at 708 (hand tremors not severe when there was evidence that claimant exaggerated or invented ailments, medical exams proved normal, and any genuine impairment was slight); *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir.1997) (claimant never followed a regular regime of medical treatment for physical complaints and used no prescription medications for pain or for other conditions; *Nguyen v. Chater*, 75 F.3d 429, 431 (8th Cir. 1996.) (generalized osteoarthritis with significant osteoarthritis in both knees which could be controlled with mild anti-inflammatories was not severe).

In this case, Plaintiff had shoulder surgery on November 21, 2003 and reported her shoulder as doing "much, much better" on December 1, 2003. (Tr. 409.) She did not attend any physical therapy. (Tr. 408.) There are no medical records indicating treatment for or complaints about her shoulder past January 21, 2004. (Tr. 408.)

7

Plaintiff was diagnosed with GERD on April 2, 2004 when she presented for atypical chest pain on April 1, 2004. (Tr. 230.) At that time she told the physicians that she had been taking medication for a peptic ulcer, but stopped. (Tr. 230-31.) She was diagnosed with GERD again on December 1, 2005 when she presented at Unity Health Center ER for atypical chest pain. (Tr. 256.) As discussed above in Section A, there are no further medical documents whatsoever between December 2005 and March 2010.

In summary, it does not appear that the Plaintiff has followed any regime of regular treatment for her shoulder or her GERD. Accordingly, the ALJ's determination that these impairments are not severe is supported by substantial evidence.

### IV.   Conclusion

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decisions, and thus the decision should be affirmed.[4] The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 4th day of March 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[4]While this Court has affirmed the decision of the ALJ, it is not without concern for the Plaintiff's current medical condition. If she has not already done so, she is urged to discuss the possibility of pursuing SSI benefits with counsel.

AO72A
(Rev. 8/82)